# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | )<br>)<br>) Case No. 2:18CR00008-002<br>)<br>) **OPINION**<br>)<br>) J<small>UDGE</small> J<small>AMES</small> P. J<small>ONES</small><br>)<br>) |
| v. | |
| **VICTOR LEBRON,** | |
| Defendant. | |

*Randy Ramseyer, Assistant United States Attorney, Abingdon, Virginia, for United States; Victor Lebron, Defendant Pro Se.*

Victor Lebron, previously sentenced by this court, has filed a Motion Pursuant to 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence, alleging that he was deprived of effective assistance of counsel. The United States has filed a Motion to Dismiss, and the defendant has responded. For the reasons stated, I will grant the Motion to Dismiss and dismiss the § 2255 motion.

I.

On May 23, 2015, Lebron was serving a federal sentence for drug convictions at the United States Penitentiary Lee County (USP Lee), when he was visited by Christy Santiago. After his visit with Santiago concluded, USP Lee staff instructed Lebron to submit to a body scan, which he refused. Consequently, Lebron was place into a dry cell, where he was monitored until he was able to provide a stool sample. Two days later, Lebron defecated two rubber balloons containing 50 Suboxone

strips. Lebron denied having received the Suboxone from Santiago. Investigators later identified emails between Lebron and Santiago in which Lebron used coded language about sending money to individuals. Investigators also discovered that a package containing Suboxone had been sent to Lebron at USP Lee a year earlier.

In January 2017, the government filed an Information against Lebron for the May 2015 conduct in Case Number 2:17-cr-00002, charging Lebron with a single count of knowingly possessing Suboxone as a federal inmate, in violation of 18 U.S.C. § 1791(a)(2), (b)(3), (d)(1)(B). Lebron pled guilty to the charge pursuant to a plea agreement, which provided that he was waiving his right to appeal and that he understood if he filed an appeal other than one based on a non-waivable ground, he would be violating the agreement. Lebron was sentenced to 36 months' imprisonment. Despite the appeal waiver, Lebron filed a pro se appeal. The court of appeals subsequently appointed counsel to represent Lebron on appeal, but denied the appeal based on the waiver contained in the plea agreement. *United States v. Lebron*, 699 F. App'x 265, 266 (4th Cir. 2017) (unpublished).

In July 2018, a grand jury of this court indicted both Lebron and Santiago, assessing additional charges for the May 2015 events at USP Lee. Lebron was charged with conspiracy to provide an inmate a prohibited object, Suboxone, in violation of 18 U.S.C. § 371 (Count Four); conspiracy to distribute and possess with intent to distribute Suboxone, in violation of 21 U.S.C. §§ 846, 841(b)(1)(E) (Count

Five); possession with intent to distribute Suboxone, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(E) (Count Six); and making a false statement, in violation of 18 U.S.C. § 1001(a)(2) (Count Seven).

A jury trial was held in December 2018. At trial, Special Investigative Services Technician Michael Blevins testified about his investigation of Lebron's possession of Suboxone at USP Lee in May 2015. Investigator Blevins explained how Suboxone is typically distributed and paid for within the facility based on his experience. He identified Suboxone in various pictures and testified that some inmates will cut Suboxone strips into small squares to sell.

> Q. And, in your experience, if somebody has multiple Suboxone strips at 50, is that for distribution within the prison?
>
> A. Yes, sir.

Trial Tr. 96, ECF No. 114. Blevins also testified regarding a picture of the visiting room at USP Lee and the fact that only some of the cameras in the visiting room were working in May 2015. Blevins explained that he was not able to detect Lebron receiving any drugs from Santiago from looking at the visiting room cameras. The prosecutor then asked if drugs would likely be able to escape detection if a female visitor were to hide the drugs in her vagina, remove the drugs while in the restroom, hide the drugs in food, and give the food to an inmate, and the inmate were to ingest the food. Blevins stated that that scenario likely would not be seen on video.

Investigator Blevins also described an interview that he had conducted with Lebron after Lebron excreted the balloons filled with Suboxone strips. Blevins stated that Lebron had told him that he had not expected the visit from Santiago, and that he had gotten the Suboxone "off the compound. . . . He was called to visitation. He didn't know what to do with it, so he swallowed it." *Id.* at 112. Blevins explained that based on his experience, he had never caught an inmate merely carrying narcotics in balloons and that balloons were used to introduce drugs into the facility because they seal the drugs and keep the person who ingests them from overdosing.

On day two of the trial, the jury convicted Lebron of all counts.[1] Thereafter, the court sentenced Lebron to 180 months' imprisonment and ordered that the sentence run concurrently with the 36-month sentence imposed in 2017. Lebron appealed his conviction and sentence, arguing (1) that the evidence at trial was insufficient to show both an agreement to support his conspiracy conviction and that the possession of 50 strips of Suboxone indicated distribution as opposed to personal use, (2) that the government had failed to demonstrate how Lebron's statement about not expecting Santiago's visit was material so as to support a conviction on Count Seven, and (3) that Lebron's sentence was substantively unreasonable. *United States v. Lebron*, 858 F. App'x 634, 636–37 (4th Cir. 2021) (unpublished). The court of

---

[1] The jury acquitted Santiago of some counts, but found her guilty of the two conspiracy counts also charged against Lebron, Counts Four and Five.

appeals affirmed Lebron's conviction and sentence, finding that the evidence was sufficient to support each of Lebron's convictions and that the sentence was substantively reasonable.  *Id.* at 637.

Thereafter, Lebron timely filed the present § 2255 motion.  He argues that his appellate counsel in his latest appeal was ineffective by failing to raise the issue of whether his prior counsel was ineffective (Ground One) and that his trial counsel was ineffective by failing to object to certain evidence introduced at trial, namely the photos of Suboxone and testimony concerning how Suboxone is distributed in prison (Ground Two), by failing to investigate what constitutes a single use prescription of Suboxone and whether the visiting room cameras were working on the day at issue (Ground Three), and by failing to object to hypotheticals and inferences projected by the prosecutor at trial and to properly raise the issue of materiality as to Count Seven (Ground Four).  The government has moved to dismiss Lebron's § 2255 motion.  The matter is now ripe for decision.

## II.

To state a viable claim for relief under § 2255, a defendant must prove: (1) that his sentence was "imposed in violation of the Constitution or laws of the United States"; (2) that "the court was without jurisdiction to impose such sentence"; or (3) that "the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  28 U.S.C. § 2255(a).  The movant bears the burden of

proving grounds for a collateral attack by a preponderance of the evidence. *Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958). He must "state facts that point to a real possibility of constitutional error." *United States v. Dyess*, 730 F.3d 354, 359 (4th Cir. 2013).[2] "[V]ague and conclusory allegations . . . may be disposed of without further investigation by the District Court." *Id.*

Ineffective assistance of counsel claims are constitutional in nature and may be raised in § 2255 motions. Criminal defendants have a Sixth Amendment right to effective legal assistance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Ineffective assistance claims, however, are not lightly granted — "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Id.* at 686.

To that end, a defendant must satisfy a two-prong analysis showing both that counsel's performance was deficient and that the defendant was prejudiced by counsel's alleged deficient performance. *Id.* at 687. The first prong requires a defendant to show that counsel's representation "fell below an objective standard of reasonableness." *Id.* at 688. To satisfy the prejudice prong, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional error, the

---

[2] I have omitted internal quotation marks, citations, and alterations here and throughout this opinion unless otherwise noted.

outcome of the proceeding would have been different. *Id.* at 694. The Court is not required to analyze the two prongs of the Strickland test in order. If a defendant fails to meet the burden of proving prejudice, the reviewing court need not even consider the performance prong. *Fields v. Att'y Gen. of Md.*, 956 F.2d 1290, 1297 (4th Cir. 1992).

Lebron first argues that the attorney who represented him on his latest appeal (Appellate Counsel Two) was ineffective by failing to raise the issue of whether his prior appellate counsel (Appellate Counsel One), who was appointed after Lebron filed his pro se appeal in 2017, was ineffective because Appellate Counsel One "never explained to [him] the exposure he was facing by pursing the appeal" or "that by filing the appeal . . . [he] would violate the plea agreement." Def.'s Mot. 6, ECF No. 162.

Lebron cannot establish deficient performance or prejudice. Counsel is not required to argue every nonfrivolous point on appeal, "only when ignored issues are clearly stronger than those presented," should courts find ineffective assistance of counsel for failure to pursue claims on appeal. *United States v. Mason*, 774 F.3d 824, 828–29 (4th Cir. 2014). As highlighted by the government, there is no record of Appellate Counsel One's advice that would have provided any basis for Appellate Counsel Two to raise the issue on appeal. Appellate Counsel Two's choice to focus on the reasonableness of Lebron's above-guidelines sentence and the sufficiency of

the evidence to support his convictions does not constitute conduct that falls below an objective standard of reasonableness. Moreover, Lebron has not established that he was prejudiced by such conduct, since Appellate Counsel One was only appointed after his pro se filing in violation of the plea agreement. Accordingly, Lebron cannot show a reasonable probability that his most recent appeal would have been any different even if Appellate Counsel Two had raised the issue.

Ground Two also fails because Lebron cannot show that his trial counsel was constitutionally ineffective by failing to object to the photos of the Suboxone and testimony about how Suboxone is typically introduced into prison. This evidence was introduced through Investigator Blevins, who testified about his personal experience working at USP Lee since 2009 and conducting investigations regarding the introduction of drugs into the facility. Trial Tr. 93, ECF No. 114. Investigator Blevins established that he was familiar with Suboxone, the drug at issue in Lebron's case. *Id.* The government introduced photographs of Suboxone when questioning Investigator Blevins about Suboxone generally, but it also made it clear which photograph of Suboxone came from Lebron's stool, *id.* at 111, negating any argument that the demonstrative photographs showing what Suboxone looks like and how it is typically cut in prison might have created an improper inference as to what Lebron actually possessed. Because the evidence was properly admitted,

Lebron has not established that his attorney's failure to object fell below an objective standard of reasonableness.

In Ground Three, Lebron contends that his attorney should have investigated what constitutes a single use prescription of Suboxone and whether the visiting room cameras were working. Lebron is unable to establish that he was prejudiced by his attorney's alleged failure to investigate these issues. Investigator Blevins testified that some visiting room cameras were not working on the day in question, and he also testified that the cameras did not show Lebron or show Santiago passing off any drugs to Lebron or anyone else. Consequently, no reasonable probability exists that additional evidence about the cameras might have changed the outcome of the trial. As for personal use quantities of Suboxone, trial counsel did question Investigator Blevins about personal use dosages, to which Blevins explained he was unfamiliar with how pharmacists prescribed Suboxone. Trial Tr. 10–11, ECF No. 115. Even if counsel had introduced evidence about single use prescriptions of Suboxone, other evidence was introduced which supported the jury's finding as to the distribution charge. A forensic accountant testified about money Santiago transferred to Lebron and vice versa. Emails were introduced in which Lebron discussed sending money to various individuals. Investigator Blevins testified about distribution amounts based on his years of experience. In short, Lebron has not established a reasonable

likelihood of a different trial outcome even if his attorney had conducted additional investigations on personal use amounts of Suboxone.

In Ground Four, Lebron alleges that his attorney was constitutionally ineffective by failing to object to "hypotheticals and inferences used as 'circumstantial evidence'" to show the existence of a conspiracy. Def.'s Mot. 31, ECF No. 162. Lebron does not specify which "hypotheticals" and "inferences" to which he believes his attorney should have objected. This vague claim warrants dismissal, *Dyess*, 730 F.3d at 359, but to the extent Lebron is rehashing the claims he raised in his other grounds, they fail for the same reasons as stated above.

Moreover, to the extent Lebron is attempting to argue that the evidence was insufficient to support his conspiracy and distribution convictions, Lebron's claim still fails. Lebron's attorney, during cross examination, questioned Investigator Blevins about the connection between Lebron and certain emails introduced into evidence and the lack of direct evidence showing that Lebron received Suboxone from Santiago. Counsel's decision not to object to admissible circumstantial evidence, and his choice instead to attempt to highlight weaknesses in the government's case through cross-examination, is not conduct that falls below an objective standard of reasonableness.

Finally, Lebron contends that that his attorney did not properly raise or investigate materiality with regard to Lebron's statement to Investigator Blevins that

Santiago's visit was unexpected. This claim fails because counsel did challenge the materiality of Lebron's statement and moved for acquittal on Count Seven after the government rested. Trial Tr. 72–74, ECF No. 115. Counsel again raised the issue before the jury during closing arguments. *Id.* at 104. Counsel's failure to name particular cases in making his arguments does not rise to the level of constitutionally deficient performance. Accordingly, this claim lacks merit.

### III.

For these reasons, the United States' Motion to Dismiss will be granted, and the Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255, will be dismissed. A separate final order will be entered herewith.

DATED: July 7, 2023

/s/ JAMES P. JONES
Senior United States District Judge